IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ANTHONY ANTONELLI**, | : | |
| | : | Case No.   19-cv-3927-JMY |
| *Plaintiff* | : | |
| | : | |
| v. | : | |
| | : | |
| **YOUTH EDUCATION IN THE ARTS!, ET AL.**, | : | |
| | : | |
| *Defendants* | : | |

## MEMORANDUM

**YOUNGE, J.**                                                                                                          **MARCH 3, 2020**

Plaintiff Anthony Antonelli sues Defendants Youth Education in the Arts! ("YEA") and Vicki Ferrance Ray ("Ray") asserting six separate causes of action relating to an injury he sustained while volunteering with Defendants during summer 2019. Now before the Court is Defendants' Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) ("Mot.," ECF No. 9). The Court finds this matter appropriate for resolution without oral argument. Fed. R. Civ. P. 78; L.R. 7.1(f). For the reasons that follow, Defendants' Motion will be granted in part and denied in part.

**I.        BACKGROUND**

**A. Facts**

Unless otherwise noted, the following facts and allegations are taken from Plaintiff's First Amended Complaint ("FAC," ECF No. 7).[1] For the purposes of the instant motion, the Court takes as true all factual allegations contained in Plaintiff's FAC. *See Evancho v. Fisher*,

---

[1] The Court adopts the pagination supplied by the CM/ECF docketing system.

423 F.3d 347, 350 (3d Cir. 2005) (noting that a court is "required to accept as true all allegations in the complaint" when deciding a Rule 12(b)(6) motion).

Plaintiff, a resident of Colorado, "has worked professionally as a motor coach operator and entertainer bus driver . . . for over twenty years." (FAC ¶¶ 3, 16.) YEA is a nonprofit corporation that "operates several performing arts programs, including the Cadets Drum & Bugle Corps ('the Cadets')." (*Id*. ¶¶ 4, 9.) "During March 2019, YEA recruited Plaintiff to work for YEA for the Cadets summer 2019 tour as their transportation director. The summer tour would last from June through mid-August 2019." (*Id*. ¶ 18.) "Plaintiff agreed to accept the transportation director position which YEA offered on or about March 2019." (*Id*. ¶ 21.) "In April 2019, YEA sent Plaintiff a written contract via email, . . . [which Plaintiff signed and] electronically transmitted back to YEA." (*Id*. ¶¶ 22-23.) The contract "provided that Plaintiff would work as a transportation director for the Cadets for the summer 2019 tour. The Plaintiff's employment would commence on June 19, 2019 and end on August 13, 2019." (*Id*. ¶ 24.)

On May 22, 2019, "YEA flew Plaintiff from Aurora, Colorado to Saginaw, Pennsylvania, which was the location of one of the Cadets extended training camps before their competitive season began." (*Id*. ¶ 26.) "During the time between May 22, 2019 and the date of the injury on June 14, 2019, Plaintiff worked as directed by the Cadets Director to drive vehicles owned by YEA[.] . . . At this point in time, from May 22, 2019 to the date of injury, the Plaintiff was not compensated by YEA and was a volunteer. [Significantly,] [h]is start date as provided for in his written contract with YEA was June 19, 2019." (*Id*. ¶ 27.)

"On June 14, 2019, the Cadets Director directed the Plaintiff to paint the roof top air conditioner" on one of the buses, which was "approximately thirteen feet off the ground." (*Id*. ¶ 30.) "Plaintiff removed one of the [thirteen] foot ladders from a Cadets trailer vehicle[,]"

"climbed the ladder and painted the air conditioner[.]" (*Id*. ¶¶ 32, 34.) "As Plaintiff attempted to climb down from the bus roof, the ladder moved unexpectedly and Plaintiff fell down the ladder. [According to Plaintiff,] [t]here was no other YEA employee or volunteer present to hold the ladder while Plaintiff attempted to climb down." (*Id*. ¶ 35.) Because of the fall, "Plaintiff sustained a broken right tibia, broken right fibula and shattered his right ankle." (*Id*.) "One of the Cadets employees drove Plaintiff to the hospital . . . [where he] had to endure a [four-and-a-half-hour] surgery." (*Id*. ¶¶ 36-37.) Plaintiff asserts that no one from YEA attempted to visit or contact Plaintiff while he was at the hospital, and that "he was abandoned, seriously injured, in significant pain and [all] alone at a hospital 1200 miles from his home." (*Id*. ¶ 38.)

### B. Procedural History

Plaintiff filed this action against Defendants on August 29, 2019. (ECF No. 1.) On November 19, 2019, Plaintiff filed his FAC, in which Plaintiff asserts six claims for relief:

**COUNT 1**: Breach of Contract, asserted against YEA;

**COUNT 2**: Quantum Meruit/Unjust Enrichment, asserted against YEA;

**COUNT 3**: Pennsylvania Wage Payment and Collection Law (43 P.S. § 260.1 *et seq*.) ("WPCL"), asserted against YEA and Ray;

**COUNT 4**: Promissory Estoppel, asserted against YEA;

**COUNT 5**: Negligence, asserted against YEA; and

**COUNT 6**: Negligent Infliction of Emotional Distress, asserted against YEA.[2]

(FAC ¶¶ 40-75.) Plaintiff seeks compensatory and punitive damages, attorneys' fees and costs, and all other relief the Court deems just and equitable. (*Id.*)

---

[2] Defendants maintain that "Plaintiff's [FAC] does not plausibly plead a claim for negligent infliction of emotional distress[,]" and offer multiple arguments in support thereof. (*See* Mot. at 19-21.) Plaintiff advances no argument in response to Defendants' arguments for dismissal. (*See generally* Pl.'s Opposition ("Opp."), ECF No. 11.) Thus, the Court assumes Plaintiff has abandoned this claim and will accordingly dismiss it *without prejudice*.

3

Defendants filed the instant Motion to Dismiss on December 3, 2019.  Plaintiff filed his opposition to Defendants' Motion on December 17, 2019.

## II.   LEGAL STANDARD

Defendants move to dismiss all of Plaintiff's claims under Federal Rule of Civil Procedure 12(b)(6) "on the basis that Plaintiff's [FAC] does not plausibly state a claim upon which relief could be granted."  (Mot. at 1, 5-6.)

The motion to dismiss standard under Federal Rule of Civil Procedure 12(b)(6) is set forth in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).  After *Iqbal*, it is clear that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to defeat a Rule 12(b)(6) motion to dismiss.  *Id*. at 678; *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  "To survive dismissal, 'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'"  *Tatis v. Allied Interstate, LLC*, 882 F.3d 422, 426 (3d Cir. 2018) (quoting *Iqbal*, 556 U.S. at 678).  Facial plausibility is "more than a sheer possibility that a defendant has acted unlawfully."  *Id*. (quoting *Iqbal*, 556 U.S. at 678).  Instead, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id*. (quoting *Iqbal*, 556 U.S. at 678).

Our Court of Appeals requires us to apply a three-step analysis under a 12(b)(6) motion: (1) "[the district court] must tak[e] note of the elements [the] plaintiff must plead to state a claim;" (2) "it should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth;'" and, (3) "[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly

give rise to an entitlement to relief." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (quoting *Iqbal*, 556 U.S. at 675, 679).

When a motion to dismiss is granted, the court must decide whether to grant leave to amend. The Third Circuit has a liberal policy favoring amendments and, thus, leave to amend should be freely granted. *See, e.g., Oran v. Stafford*, 226 F.3d 275, 291 (3d Cir. 2000); *Dole v. Arco Chem. Co.*, 921 F.2d 484, 486 (3d Cir. 1990). However, a court need not grant leave to amend when it would be an exercise in futility. *City of Cambridge Ret. Sys. v. Altisource Asset Mgmt. Corp.*, 908 F.3d 872, 879 (3d Cir. 2018) ("Leave to amend is properly denied if amendment would be futile, *i.e.*, if the proposed complaint could not 'withstand a renewed motion to dismiss.'") (quoting *Jablonski v. Pan. Am. World Airways, Inc.*, 863 F.2d 289, 292 (3d Cir. 1988)); *see also In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997) (recognizing that denial of leave to amend is not an abuse of discretion where the pleadings before the court demonstrate that further amendment would be futile).

### III. DISCUSSION

#### A. Count I – Breach of Contract

Defendants maintain that this claim should be dismissed because the FAC "fails to plead that Plaintiff performed labor for YEA while under the scope of his employment contract[, and without] pleading any labor that was actually performed pursuant to a contract, Plaintiff has not plausibly shown that YEA breached its duty under the contract by refusing to compensate Plaintiff for his work." (Mot. at 7.) In response, Plaintiff contends that he sufficiently alleges "that [] YEA has breached [it's] duty by refusing to compensate Plaintiff for his work." (Opp. at 6 (citing FAC ¶ 43).)

"It is well-established that three elements are necessary to plead a cause of action for breach of contract: (1) the existence of a contract, including its essential terms, (2) a breach of the contract; and (3) resultant damages." *Meyer, Darragh, Buckler, Bebeneck & Eck, P.L.L.C. v. Law Firm of Malone Middleman, P.C.*, 137 A.3d 1247, 1258 (Pa. 2016) (citing *J.F. Walker Co., Inc. v. Excalibur Oil Grp., Inc.*, 792 A.2d 1269, 1272 (Pa. Super. Ct. 2002)).

Here, Plaintiff adequately alleges that a contract existed between Plaintiff and YEA. (*See* FAC ¶ 22-25, 41.) However, Plaintiff's conclusory allegation regarding breach is insufficiently pled and, in the Court's view, contradicted by the allegations in the FAC. *See Iqbal*, 556 U.S. at 678. Plaintiff acknowledges in his FAC that under the contract Plaintiff's employment was to commence on June 19, 2019, and end on August 13, 2019. (*See* FAC ¶ 24.) Further, prior to the effective start date of the contract, Plaintiff admits he was working as a volunteer from May 22, 2019, to the date of his injury on June 14, 2019. (*Id*. ¶¶ 27, 33, 35.) Moreover, the FAC is silent as to whether Plaintiff worked for YEA at any time after his injury. Thus, the Court finds that Plaintiff has failed to plead that he performed any work for YEA while under the scope of his employment contract and within the governing time period. And, as Defendants correctly point out "[without] pleading any labor that was actually performed pursuant to the contract, Plaintiff has not plausibly shown that YEA breached its duty under the contract by refusing to compensate Plaintiff for his work." (Mot. at 7); *see Schlein v. Gross*, 142 A.2d 329, 332 (Pa. Super. Ct. 1958) (recognizing the principle that a material failure of performance by one party to a contract discharges the duty of the other party to perform the promise); *see also Theobald v. R.H. Kuhn Co., Inc.*, No. 342 WDA 2016, 2017 WL 1041394, at *4 (Pa. Super. Ct. Mar. 17, 2017) ("one party's breach of a contract may render the other party's tender of performance a futile act"); *see also Empire Props., Inc. v. Equireal, Inc.*, 674 A.2d 297, 305 (Pa. Super. Ct.

1996) ("A party who cannot perform its own obligations under a contract is not entitled to collect damages.").

However, what is unclear to the Court at this time is whether Plaintiff's allegation that his presence and "volunteer work" at YEA's worksite several weeks prior to the official commencement of his contract, which were borne at YEA's expense, was a mandatory pre-condition to his employment. Thus, the Court will dismiss Plaintiff's breach of contract claim *without prejudice* with leave to amend.

### B. Count II – Unjust Enrichment/Quantum Meruit

Defendants contend that this claim should be dismissed "because Plaintiff has failed to plausibly show that YEA received benefits under circumstances that were unjust [and, as] a general rule, volunteers have no right to recovery for unjust enrichment." (Mot. at 8-9.) Defendants further aver that it would "not be unjust for YEA to retain a benefit when it is being offered by a volunteer who was under no expectation of receiving compensation for his labor." (*Id*. at 9.) Plaintiff disagrees, arguing that he "did not intend to leave his home in Colorado (FAC ¶ 26), turn down other offers of employment (*id*. ¶ 20), and travel to Pennsylvania (*id*. ¶ 26) to work for [] YEA for free." (Opp. at 7.)

"'Unjust enrichment' is essentially an equitable doctrine." *Mitchell v. Moore*, 729 A.2d 1200, 1203 (Pa. Super. 1999), *appeal denied*, 751 A.2d 192 (Pa. 2000) (citation omitted). "Where unjust enrichment is found, the law implies a contract, which requires the defendant to pay to the plaintiff the value of the benefit conferred." *Id*. (citation omitted). The elements of unjust enrichment are: "(1) benefits conferred on defendant by plaintiff; (2) appreciation of such benefits by defendant; and (3) acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain the benefit without payment of

7

value." *Id*. "The application of the doctrine depends on the particular factual circumstances of the case at issue." *Id*. at 1203-04. "In determining if the doctrine applies, [the Court's] focus is not on the intention of the parties, but rather on whether the defendant has been unjustly enriched." *Id*. at 1204; *see also Torchia v. Torchia*, 499 A.2d 581, 582 (1985) ("[t]o sustain a claim of unjust enrichment, a claimant must show that the party against whom recovery is sought either 'wrongfully secured or passively received a benefit that it would be unconscionable for her to retain.'") (citation omitted). "The most significant element of the doctrine is whether the enrichment of the defendant is unjust; the doctrine does not apply simply because the defendant may have benefitted as a result of the actions of the plaintiff." *Konidaris v. Portnoff Law Assocs., Ltd*., 884 A.2d 348, 355 (Pa. Commw. Ct. 2005), *reversed in part on other grounds*, 953 A.2d 1231 (Pa. 2008).

The Court finds that Plaintiff has failed to plausibly show that YEA received benefits under circumstances that were unjust. Taken as true, the allegations of the FAC aver that Plaintiff performed volunteer work for YEA prior to the effective start date of the contract; that YEA flew Plaintiff from his home in Colorado to Pennsylvania to perform volunteer work as a transportation director; and that YEA retained the benefit of those services. Under these circumstances, it is not plausible for the Court to infer that YEA's retention of Plaintiff's volunteer services absent compensation for such work was unjust.

Accordingly, the Court will dismiss Plaintiff's unjust enrichment/quantum meruit claim *without prejudice* with leave to amend.

### C. Count III – Pennsylvania Wage Payment and Collection Law

Defendants contend that this claim should be dismissed because the FAC is "devoid of any reference to labor that was actually performed by Plaintiff while under his employment

8

contract[, and without] pleading this material term, Plaintiff has not plausibly shown that he is entitled to recovery from YEA under Pennsylvania's [WPCL], as he has not shown that he is owed anything." (Mot. at 10-11.)

"[A] prerequisite for relief under the WPCL is a contract between [the] employee and employer that sets forth their agreement on wages to be paid . . . Relief under the WPCL is implausible without [the] existence of a contract." *Giuliani v. Polysciences, Inc.*, 275 F. Supp. 3d 564, 576 (E.D. Pa. 2017) (internal quotation marks and citations omitted). "In other words, to sustain [a] wage-payment claim, [the plaintiff] must demonstrate that he was contractually entitled to compensation and that he was not paid." *Id*. (internal quotation marks and citation omitted). "The contract between the parties governs in determining whether specific wages are earned." *Weldon v. Kraft, Inc.*, 896 F.2d 793, 801 (3d Cir. 1990). Notably, "[t]he mere fact that certain compensation is not payable until a future date is not necessarily fatal to a WPCL claim so long as the employee is deemed to have 'earned' it during his employment." *Riseman v. Advanta Corp.*, 39 F. App'x 761, 765 (3d Cir. 2002).

Here, Plaintiff's claim for violation of the WPCL fails for the same reason that his breach of contract claim fails—Plaintiff fails to plead facts from which the Court can infer that he performed any labor that was contemplated by the terms of the contract; rather, Plaintiff pleads facts demonstrating that he was volunteering for Defendants until the time that he was injured, which was prior to the effective start date of the subject contract. (*See* FAC ¶ 27, "At this point in time, from May 22, 2019 to the date of injury, the Plaintiff was not compensated by YEA and was a volunteer.") In other words, because the contract between the parties does not provide for compensation related to volunteer work, the Court finds that Plaintiff has not "earned" any wages pursuant to that contract. *See Weldon*, 896 F.2d at 801. Thus, Plaintiff is not entitled to

recover statutory damages pursuant to the WPCL as Plaintiff did not actually earn any wages under the contract.

Accordingly, the Court will dismiss Plaintiff's WPCL claim *with prejudice*.

### D. Count IV – Promissory Estoppel

Defendants maintain that this claim should be dismissed because the FAC "does not plead any facts that suggest YEA promised to compensate Plaintiff for the time that he volunteered from May 22 to June 14." (Mot. at 13.) Plaintiff responds that "YEA made a promise that they should have reasonably expected to induce action or forbearance on the Plaintiff's part . . . [and that] this is established by the fact that [] YEA recruited the Plaintiff to be the YEA transportation director." (Opp. at 9.) In the Court's view, the allegations in the FAC are unclear as to whether YEA promised to compensate Plaintiff for his volunteer efforts, or whether YEA only promised to compensate Plaintiff for his services under the contract.

Pennsylvania law does not allow a claim of promissory estoppel when a binding contract exists. *Atl. Paper Box Co. v. Whitman's Chocolates*, 844 F. Supp. 1038, 1043 (E.D. Pa. 1994). Thus, to recover under a theory of promissory estoppel, a claimant must establish that: "(1) the promisor made a promise that [it] should have reasonably expected would induce action or forbearance on the part of the promisee; (2) the promisee actually took action or refrained from taking action in reliance on the promise, and (3) injustice can be avoided only by enforcing the promise." *Sullivan v. Chartwell Inv. Partners, LP*, 873 A.2d 710, 717-18 (Pa. Super. Ct. 2005) (citing *Shoemaker v. Commonwealth Bank*, 700 A.2d 1003, 1006 (Pa. Super. Ct. 1997)).

Plaintiff successfully alleges a promise by YEA in his FAC that could be reasonably expected to induce action or forbearance; however, as indicated above, it is unclear whether this promise to compensate applies to his volunteer efforts (for work performed from May 22, 2019

10

through June 14, 2019) or only to his services within the scope of the contract (for transportation related work performed from June 19, 2019 through August 13, 2019). (*See* FAC ¶¶ 18, 61, "[d]uring March 2019, YEA recruited Plaintiff to work for YEA for the Cadets summer 2019 tour as their transportation director. The summer tour would last from June through mid-August 2019" . . . "YEA made a promise of compensation to Plaintiff . . . [.]"). Thus, to the extent Plaintiff premises his claim on a promise to compensate him for services that were to be performed from June 19, 2019 through August 13, 2019, the Court finds that this claim fails as a matter of law. *See Atl. Paper Box Co.*, 844 F. Supp. at 1043. However, Plaintiff's claim would not fail as a matter of law if the promise to compensate applies to the period from May 22, 2019 through June 14, 2019. The Court also notes that the FAC alleges action taken by Plaintiff in reliance on the alleged promise: "Plaintiff declined the offer of employment for the summer 2019 from the Concord Blue Devils and ceased discussions with the Canton Bluecoats specifically because Plaintiff accepted the offer of employment from YEA for summer 2019." (*Id.* ¶ 61.) Plaintiff also alleges damages. (*See id.* ¶ 62.)

Thus, given the lack of clarity in the pleadings, the Court will dismiss this claim *without prejudice* with leave to amend.

### E. Count V – Negligence

Defendants move to dismiss Plaintiff's claim for negligence arguing that the FAC does "not plausibly suggest that YEA's negligence caused Plaintiff's injuries." (Mot. at 13.)[3] More

---

[3] Defendants also argue that this claim must be dismissed to "the extent that Plaintiff asserts he was an employee of YEA, [because] YEA is immune to Plaintiff's negligence claims under [the] Pennsylvania Workers' Compensation Act." (Mot. at 13.) However, as Plaintiff correctly points out, the Pennsylvania Workers' Compensation Act is inapplicable in the present case as "Plaintiff was a volunteer on the date he was injured." (Opp. at 10); *see also Wolf v. Workers' Comp. Appeal Bd.*, 705 A.2d 483, 485 (Pa. Commw. Ct. 1997) ("The Act itself provides further evidence that the legislature of this state did not intend to include volunteers . . . within the parameters of the Act.").

specifically, Defendants point out that "[d]espite alleging that YEA failed to provide safety equipment, the [FAC] does not plead or identify any type of safety equipment that is required or even available to use with a 13-foot ladder. Because the requirement or availability of safety equipment for a 13-foot ladder is not clear, Plaintiff does not plausibly plead a claim for failing to provide safety equipment." (Mot. at 15.) Lastly, Defendants assert that "while Plaintiff generally concludes that YEA should have provided supervision, Plaintiff does not assert that he was not familiar with using a ladder or how 'supervision' would have prevented his accident." (*Id*.)

The Court disagrees with Defendants' contentions. Our pleading standards do not require Plaintiff to specify in detail any safety equipment he believed should have been provided at the time of the alleged accident. *See Iqbal*, 556 U.S. at 678; *see also Twombly*, 550 U.S. at 555 ("[A] complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations[.]"). Nor does Plaintiff need to allege that he was not familiar with how to use a ladder or how supervision could have prevented his fall. Moreover, the Court finds that Plaintiff has sufficiently pled facts to support a cognizable negligence claim. *See Belmont v. MB Inv. Partners, Inc.*, 708 F.3d 470, 488 (3d Cir. 2013) (detailing the four elements of common law negligence, *i.e.*, duty, breach, causation, and damages).

Accordingly, the Court declines to dismiss Plaintiff's negligence claim.

### F. Punitive Damages

Defendants also request dismissal of Plaintiff's prayer for punitive damages, arguing that the FAC "does not plausibly assert a claim for punitive damages based upon YEA's alleged negligent conduct." (Mot. at 16-19; *see also* FAC at 12.)

Under the applicable Pennsylvania law, punitive damages are proper "only in cases where the defendant's actions are so outrageous as to demonstrate willful, wanton or reckless conduct." *Hutchison ex rel. Hutchison v. Luddy*, 870 A.2d 766, 770 (Pa. 2005). Although ordinary negligence will not support an award of punitive damages, "punitive damages are appropriate for torts sounding in negligence when the conduct goes beyond mere negligence and into the realm of behavior which is willful, malicious, or so careless as to indicate wanton disregard for the rights of the parties injured." *Id*. (citing Restatement (Second) of Torts § 908 (1979)).

The Court will decline to strike the prayer for punitive damages at this early stage in the litigation. Plaintiff has alleged that YEA acted in a reckless manner and that its actions were outrageous. (*See* FAC ¶¶ 71-75.) These allegations, if proven, may support a claim for punitive damages. Discovery is necessary to this determination. *See Welch v. Nationstar Mortg., LLC*, 2020 WL 470305, at *5 (E.D. Pa. Jan. 29, 2020) (noting that the parties should be able to utilize civil discovery mechanisms to determine whether punitive damages are warranted).

Accordingly, the Court will deny Defendants' Motion as to Plaintiff's prayer for punitive damages.

### IV. CONCLUSION

For the reasons discussed above, the Court will grant in part and deny in part Defendants' Motion to Dismiss. An appropriate Order will follow.

**IT IS SO ORDERED.**

                                                 **BY THE COURT:**

                                                 /s/ Judge John Milton Younge
                                                 **Judge John Milton Younge**